**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL JORDAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No.: 10-cv-00340 |
| JEWEL FOOD STORES, INC., and | ) | |
| | ) | Judge Blanche M. Manning |
| SUPERVALU INC., | ) | |
| | ) | Magistrate Judge Michael T. Mason |
| Defendants. | ) | |
| _____ | | |
| | ) | |
| JEWEL FOOD STORES, INC., | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TIME INC. and VERTIS, INC., | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

**AMENDED COMPLAINT**

Plaintiff Michael Jordan, by his attorneys, for his complaint against Jewel Food Stores, Inc. and Supervalu Inc., states as follows:

**THE PARTIES**

1.      Plaintiff Michael Jordan is known throughout the world for his athletic skill and achievements as a professional basketball player and for his unique commercial appeal as an endorser of products and services.

2.      Defendant Jewel Food Stores, Inc. ("Jewel-Osco") is an Ohio corporation with its principal place of business in Itasca, Illinois, and conducts business in Cook County, Illinois.

3.     Defendant Supervalu Inc. ("Supervalu") is a Delaware corporation with its principal place of business in Eden Prairie, Minnesota.  As of February 28, 2009, Supervalu operated 1,559 stores in the United States, including its Jewel-Osco stores in Illinois.

**NATURE OF THE CASE**

4.     This case arises out of Defendants' unauthorized use of Jordan's identity in a nationally-distributed advertisement promoting Jewel-Osco.  Jordan brings these claims for violation of the right of publicity, false endorsement, false designation of origin, deceptive business practices and unfair competition against Defendants to remedy the damage caused by Defendants' unauthorized advertisement.

**FACTUAL BACKGROUND**

5.     Now retired from playing, Jordan is widely regarded as the greatest basketball player in history.  He was named the National Basketball Association's Most Valuable Player five times and was an NBA All-Star fourteen times.  His career scoring average still ranks as the NBA's best of all time.   Jordan led the Chicago Bulls to six NBA championships.  He was also a member of the 1984 and 1992 United States gold medal Olympic basketball teams.  ESPN named Jordan the greatest North American athlete of the 20th century.  He was inducted into the Basketball Hall of Fame in 2009.

6.     Jordan has also had enormous success as an endorser of products and services in which businesses that wish to profit from an association with Jordan contract with him to use aspects of his world famous identity, including his name and persona, in their advertising and marketing materials.  Jordan's persona includes, among other things, his number 23, his image and the colors and clothing associated with his basketball playing career.

7.      By carefully controlling the nature and frequency of his product endorsements – rejecting far more requests to use his name and persona than he grants – Jordan has enhanced and maintained the value of his endorsements.

8.      The majority of Jordan's income, and his income potential, is now derived from his ability to license his name and persona to commercial sponsors who wish to capitalize on his fame.  As a business, the licensing of Jordan's identity is just as important to him now as his professional basketball playing career once was.

9.      In 2009 the magazine *Sports Illustrated Presents* distributed a commemorative issue entitled *Jordan:  Celebrating A Hall of Fame Career.*

10.     On information and belief, the magazine was distributed nationwide.

11.     The magazine included a full page Jewel-Osco advertisement, a copy of which is attached to this Complaint as Exhibit A.

12.     The Jewel-Osco advertisement was authorized and created by Supervalu and Jewel-Osco.

13.     Although the Jewel-Osco advertisement congratulates Jordan on his induction into the Basketball Hall of Fame, it goes beyond that by appropriating Jordan's persona in order to promote Jewel-Osco's goods and services.

14.     The Jewel-Osco advertisement is on the full inside back cover of the magazine.  Featured in the bottom half of the advertisement is a photograph of a pair of red and white basketball shoes, each with the number 23 on the tongue of the shoe.  The shoes appear to be an inaccurate and misleading copy of Air Jordan basketball shoes, which are the subject of an endorsement agreement between Jordan and Nike, Inc.

15.     The text at the top center of the page features the headline, "A Shoe In!," lauds "Michael Jordan's elevation in the Basketball Hall of Fame" and then concludes with, "Jewel-Osco salutes #23 on his many accomplishments as we honor a fellow Chicagoan who was 'just around the corner' for so many years."

16.     Immediately below the text is a the prominent red and white logo of Jewel-Osco, together with the registered trademark, GOOD THINGS ARE JUST AROUND THE CORNER, which is registered in connection with "retail grocery store services."

17.     On information and belief, both the trademark JEWEL-OSCO (U.S. Reg. No. 2,128,535) and the phrase GOOD THINGS ARE JUST AROUND THE CORNER (U.S. Trademark Reg. No. 3,573,874) are owned by Jewel-Osco or Supervalu.

18.     Defendants never received Jordan's permission to use his identity or to imply his endorsement in connection with the goods and services offered by defendants.

19.     Jordan has never approved the use of his identity or endorsement in connection with grocery store goods and services.

20.     Jordan would never permit Defendants to use his identity in connection with any of Defendants' goods or services.

21.     On May 19, 1988, Jordan was issued United States Trademark Registration Number 1,487,719 for the mark MICHAEL JORDAN for use in connection with "promoting the goods and/or services or others through the issuance of product endorsements." The trademark registration, now owned by Jordan's company Jump 23, Inc. ("Jump 23") and used by Jordan pursuant to a license, has been in continuous use since 1984 and is incontestable. A copy of the trademark registration with current status documents for MICHAEL JORDAN is attached to this Complaint as Exhibit B.

22.     On March 12, 2002, Jump Higher, L.L.C., a company affiliated with Mr. Jordan, was issued United States Trademark Registration Number 2,547,960 for the mark 23 in connection with "bar, restaurant and catering services."  The trademark registration, now owned by Jump 23 and used by Mr. Jordan, has been used continuously since at least 1999 and is incontestable.  A copy of the trademark registration with current status documents for 23 is attached to this Complaint as Exhibit C.

23.     Jump 23 is also the owner of two trademark registrations (U.S. Reg. Nos. 3,627,002 and 3,627,003) for the trademarks MICHAEL JORDAN 23 SPORTCAFE and MICHAEL JORDAN 23 SPORTCAFE and Design.  Both trademarks are registered for use in connection with "restaurant, bar and catering services."

24.     The MICHAEL JORDAN and 23 trademarks are, and at all relevant times were, strong, famous and distinctive marks.  Jordan and Jump 23 have used the marks in interstate commerce throughout the United States for many years to promote a wide variety of goods and services.

25.     Because of the public's widespread knowledge of and admiration for Jordan, goods and services associated with the MICHAEL JORDAN and 23 marks have come to be well and favorably known and have benefitted greatly from their association with the marks.

26.     Apart from the value of the MICHAEL JORDAN and 23 marks, Jordan's name and persona have developed enormous commercial value and secondary meaning in promoting products as a result of the public's widespread knowledge and admiration of him.

27.     Jordan has been damaged by Defendants, whose unauthorized advertisement infringes Jordan's right of publicity and falsely implies Jordan's endorsement of Defendants'

goods and services. The advertisement damages Jordan by diminishing Jordan's endorsement value.

## COUNT I

### (JORDAN'S CLAIM FOR VIOLATION OF THE ILLINOIS RIGHT OF PUBLICITY ACT)

28.     Jordan realleges and incorporates by reference paragraphs 1 through 27 of this Complaint.

29.     Defendants' unauthorized use of Jordan's identity for commercial purposes is a violation of the Illinois Right of Publicity Act, 765 ILCS 1075/1-60.

30.     Defendants' use of Jordan's identity was unauthorized because Defendants did not obtain Jordan's consent to use of his identity in connection with the advertisement. In fact, Defendants did not even request Jordan's consent.

31.     Defendants' use of Jordan's identity was willful because they used Jordan's identity intentionally and with knowledge that its use was not authorized.

32.     Jordan has been damaged by Defendants' unauthorized use of his identity.

WHEREFORE, Jordan requests that relief be granted in his favor and against Defendants, jointly and severally, for (a) damages sustained by Jordan, including Defendants' profits, in an amount greater than $5,000,000, (b) punitive damages, (c) attorneys' fees and costs, (d) a permanent injunction requiring Defendants to refrain from any use of Jordan's identity without prior authorization from Jordan, (e) an order requiring Defendants to place corrective advertising in future issues of *Sports Illustrated* magazine and (f) such other and further relief as the Court deems just and proper.

## COUNT II

### (JORDAN'S CLAIM FOR VIOLATION OF SECTION 43(a) OF THE LANHAM ACT — FALSE ENDORSEMENT)

33.     Jordan realleges and incorporates by reference paragraphs 1 through 27 of this Complaint.

34.     Defendants' unauthorized use of Jordan's identity, including his name and persona, in its advertisement was a false or misleading representation of fact that falsely implies Jordan's endorsement of Defendants' goods and services.

35.     Defendants' use of the trademark GOOD THINGS ARE JUST AROUND THE CORNER in connection with its description of Jordan in its advertisement was a false or misleading representation of fact that falsely implies Jordan's endorsement of Defendants' goods and services.

36.     Defendants' unauthorized use of Jordan's identity and Defendants' use of their own trademark in its description of Jordan:

(a)   are likely to cause confusion, mistake or deception as to the affiliation, connection or association of Defendants with Jordan or as to the origin, sponsorship or approval of Defendants' goods and services by Jordan in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); or

(b)  misrepresent the nature, characteristics, or qualities of Defendants' goods, services, or commercial activities in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

37.     Jordan has been damaged by these acts.

38.     This case is an exceptional case pursuant to 15 U.S.C. § 1117.

WHEREFORE, Jordan requests that relief be granted in his favor and against Defendants, jointly and severally, for (a) damages sustained by Jordan, including Defendants' profits, in an amount greater than $5,000,000, such damages to be trebled pursuant to 15 U.S.C. § 1117, (b) attorneys' fees and costs, (c) a permanent injunction requiring Defendants to refrain from any use of Jordan's identity without prior authorization from Jordan, (d) an order requiring Defendants to place corrective advertising in future issues of *Sports Illustrated* magazine and (e) such other and further relief as the Court deems just and proper.

## COUNT III

**(JORDAN'S CLAIM FOR VIOLATION OF SECTION 43(a) OF THE LANHAM ACT —
FALSE DESIGNATION OF ORIGIN)**

39.     Jordan realleges and incorporates by reference paragraphs 1 through 27 of this Complaint.

40.     Defendants' unauthorized use in interstate commerce of Jordan's identity in connection with the advertisement of its goods and services is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Jordan as to the origin, sponsorship, or approval of Defendants' goods and services by Jordan.

41.     Jordan has been damaged by these acts, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

42.     This case is an exceptional case pursuant to 15 U.S.C. § 1117.

WHEREFORE, Jordan requests that relief be granted in their favor and against Defendants, jointly and severally, for (a) damages sustained by Jordan, including Defendants' profits, in an amount greater than $5,000,000, such damages to be trebled pursuant to 15 U.S.C. § 1117, (b) attorneys' fees and costs, (c) a permanent injunction requiring Defendants to refrain

from any use of Jordan's identity without prior authorization from Jordan, (d) an order requiring Defendants to place corrective advertising in future issues of *Sports Illustrated* magazine and (e) such other and further relief as the Court deems just and proper.

## COUNT IV

### (JORDAN'S CLAIM FOR VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE TRADE PRACTICES ACT)

43. Jordan realleges and incorporates by reference paragraphs 1 through 27 of this Complaint.

44. Defendants' acts constitute unfair methods of competition and unfair or deceptive acts or practices in violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505/2 et seq., in that those acts created a likelihood of confusion or misunderstanding as to Jordan's sponsorship or approval of Defendants' goods or services, or created a likelihood of confusion as to Defendants' affiliation, connection or association with Jordan.

45. Defendants' conduct in violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act was willful and outrageous, perpetrated by evil motive or with reckless indifference to the rights of others.

46. Jordan has been damaged by these acts.

WHEREFORE, Jordan requests that relief be granted in his favor and against Defendants, jointly and severally, for (a) damages sustained by Jordan in an amount greater than $5,000,000, (b) punitive damages, (c) attorneys' fees and costs, (d) a permanent injunction requiring Defendants to refrain from any use of Jordan's identity without prior authorization from Jordan, (e) an order requiring Defendants to place corrective advertising in future issues of *Sports Illustrated* magazine and (f) such other and further relief as the Court deems just and proper.

## COUNT V

### (JORDAN'S CLAIM FOR COMMON LAW
### UNFAIR COMPETITION)

47.     Jordan realleges and reincorporates by reference paragraphs 1 through 27 of this Complaint.

48.     Defendants' acts constitute unfair competition under the common law of the State of Illinois.

49.     Defendants' acts were willful and damaged Jordan.

WHEREFORE, Jordan requests that relief be granted in their favor and against Defendants, jointly and severally, for (a) damages sustained by Jordan in an amount greater than $5,000,000, (b) punitive damages, (c) attorneys' fees and costs, (d) a permanent injunction requiring Defendants to refrain from any use of Jordan's identity without prior authorization from Jordan, (e) an order requiring Defendants to place corrective advertising in future issues of *Sports Illustrated* magazine and (f) such other and further relief as the Court deems just and proper.

## JURY DEMAND

Jordan hereby demands a trial by jury.

Dated:  June 8, 2010                         /s/ Frederick J. Sperling
                                             Frederick J. Sperling
                                             Sondra A. Hemeryck
                                             Clay A. Tillack

                                             SCHIFF HARDIN LLP
                                             233 South Wacker Drive, Suite 6600
                                             Chicago, IL 60606
                                             (312) 258-5500

                                             Attorneys for Plaintiff
                                             Michael Jordan

## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2010 I electronically filed the foregoing Amended Complaint with the Clerk of the Court using the CM/ECF system, which will cause an electronic copy to be served on counsel of record.


/s/ Clay A. Tillack