IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL JORDAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No.: 10-cv-00340 |
| JEWEL FOOD STORES, INC., and ) | |
| SUPERVALU INC., ) | Judge Gary Feinerman |
| ) | |
| Defendants/Third-Party Plaintiffs, ) | Magistrate Judge Michael T. Mason |
| ) | |
| v. ) | |
| ) | |
| TIME INC. and VERTIS, INC., ) | |
| ) | |
| Third-Party Defendants. ) | |

**MICHAEL JORDAN'S COMBINED BRIEF IN SUPPORT OF HIS MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

Defendants acknowledge that Michael Jordan "made and continues to make his fortune in the public eye." But they contend that, unlike other companies that have negotiated and paid for the right to use Jordan's identity to promote their goods and services, they should be able to do so for free.

If Defendants had merely congratulated Jordan as they claim, there would be no need for a license. But that is not what Defendants did. Instead, Defendants chose to use the opportunity offered by the *Sports Illustrated Presents* issue commemorating Jordan's induction into the Hall of Fame to promote their goods and services through the use of what they tout as their -REDACTED- – a marketing slogan intended to convey to consumers -REDACTED-

-REDACTED- Defendants then explicitly tied Jordan to those goods and services by describing him with the same marketing slogan and -REDACTED- they use to describe themselves.

Because the undisputed facts demonstrate that Defendants' use of Jordan's identity was for commercial purposes, the Court should grant Jordan partial summary judgment on this issue and should deny Defendants' motion for summary judgment as well.

## ARGUMENT

**I.  JORDAN IS ENTITLED TO SUMMARY JUDGMENT ON THE ISSUE OF DEFENDANTS' COMMERCIAL USE OF HIS IDENTITY UNDER THE ILLINOIS RIGHT OF PUBLICITY ACT.**

The Illinois Right of Publicity Act (the "Act") makes it unlawful to use an individual's identity for commercial purposes without first obtaining written permission to do so. 765 ILCS 1075/30. The Act defines "commercial purpose" as the "public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising." 765 ILCS 1075/5.

Defendants, for purposes of their motion for summary judgment, do not contest that they used Jordan's identity in the advertisement they placed in *Sports Illustrated Presents*. (Def. Mem. at 6.) Rather, Defendants argue that their use of Jordan's identity was not for a "commercial purpose." They contend that their marketing slogan and logo in the ad merely identify the corporate speaker in the ad and nothing more, just as the inclusion of an author's name on a speech would identify the source of the speaker's message. (*Id.* at 12.) But Defendants' principal marketing slogan and logo convey much more than Defendants are now willing to acknowledge. Defendants' own words conclusively demonstrate that their *Sports Illustrated Presents* advertisement, which tied Jordan to Defendants' goods and services through

the use of Defendants' principal marketing slogan and logo, was an unauthorized commercial use of Jordan's identity.[1]

> **A. Defendants' *Sports Illustrated Presents* Ad Used Jordan's Identity To Promote Their Goods And Services.**
>
> **1. Defendants' Slogan GOOD THINGS ARE JUST AROUND THE CORNER Is Defendants' -REDACTED-**

In 2008, Supervalu, the owner of grocery store chains across the country, including Jewel-Osco, embarked on a major new nationwide marketing campaign, which is still in place today. The "new retail branding campaign more visibly communicates the company's promise of national strength and local relevance to consumers." (Plaintiff's Statement Of Undisputed Facts ("SOF") 7, 8.)

The centerpiece of Supervalu's advertising campaign is Supervalu's new slogan GOOD THINGS ARE JUST AROUND THE CORNER, which Supervalu refers to as its -REDACTED-. The GOOD THINGS ARE JUST AROUND THE CORNER campaign was announced in a press release. Supervalu's then Chairman and CEO, Jeff Noddle, heralded "Just Around the Corner" as "reinforc[ing] brand identity" in a November 2008 speech at the Morgan Stanley Global Consumer & Retail Conference in New York City. (SOF 5-9.)

In its press release, Supervalu announced that Supervalu "has begun incorporating 'Good Things Are Just Around The Corner' into consumer messaging including circulars, national ads, direct mail and some store websites. Late this year, the new brand messaging will also be

---

[1] Defendants erroneously claim that "Plaintiff has admitted that the Jewel piece shows no product, service or goods." (Def. Mem. at 9.) In fact, Jordan specifically denied Jewel's request to admit that the ad "does not mention a service" and "does not offer a service." (Def. Ex. 3, RFA Answers 37, 38.) Jordan answered further that "the Advertisement promotes Jewel's goods and services while using Jordan's identity without authorization." (Id., RFA Answers 31, 33, 35, 37, 38.)

incorporated into local radio and television ads, billboard in select markets, and new in-store signage." (SOF 10.)

> **2. Every Use Of The Slogan GOOD THINGS ARE JUST AROUND THE CORNER Is A Message To Consumers About Defendants' Goods And Services.**

The GOOD THINGS ARE JUST AROUND THE CORNER slogan is so important to Supervalu that Supervalu created a forty-eight page manual to explain the purpose of the slogan and to provide instructions on when and how it should be used. According to Supervalu,



-REDACTED-

\* \* \*

-REDACTED-

\* \* \*

-REDACTED-

\* \* \*

-REDACTED-

\* \* \*

-REDACTED-

-4-

-REDACTED-

(SOF 11 (emphasis added).)

-REDACTED-

### 3. Defendants Tied Michael Jordan To Their Goods And Services With Their Brand Message GOOD THINGS ARE JUST AROUND THE CORNER.

Nearly a year after launching its GOOD THINGS ARE JUST AROUND THE CORNER advertising campaign, Supervalu and its Illinois grocery store banner Jewel-Osco were given the opportunity to place a full page advertisement in the *Sports Illustrated Presents* issue featuring Michael Jordan to commemorate his induction into the basketball Hall of Fame. Time Warner, the publisher of *Sports Illustrated Presents*, offered Defendants the advertisement for no charge in exchange for a series of commitments, including Defendants' promise that they would stock and sell the magazines that were to contain their advertisement in special displays to be located at the front of each store. A similar opportunity was provided to Safeway and its local banner Dominick's, which competes with Jewel in the Chicago market. (SOF 14-16.)

The offer to run a full page ad in *Sports Illustrated Presents* was not the first time Defendants had been presented with this kind of advertising opportunity. A year earlier in 2008, at the outset of the GOOD THINGS ARE JUST AROUND THE CORNER advertising campaign, Supervalu and its Philadelphia store banner Acme were offered and accepted the opportunity to run a full page advertisement in connection with the *Sports Illustrated Presents* issue commemorating the Philadelphia Phillies' World Series Championship. Supervalu and Acme created and ran the advertisement, which congratulated the Phillies by using Supervalu's and Acme's new slogan and branding message with a customized "expression" for the event, EVERYDAY CELEBRATIONS ARE JUST AROUND THE CORNER. Defendants concede the 2008 Sports Illustrated ad was in fact an advertisement. (SOF 17-19.)

Defendants, when informed that they would have the opportunity to run another advertisement in *Sports Illustrated Presents* in 2009, this time in connection with Michael Jordan, leapt at what Jewel's merchandising manager called a -REDACTED- Robin Zimmerman, Jewel's copywriter based in Itasca, Illinois, was assigned responsibility for the ad. (SOF 20, 21.)

Zimmerman's superiors at the Supervalu corporate offices provided her with a copy of the 2008 Acme ad, but Zimmerman questioned whether she had to use a version of the GOOD THINGS ARE JUST AROUND THE CORNER slogan as the Acme ad had done because she thought using the slogan was "too selly" and that "it was just hitting too over the head." Zimmerman nevertheless complied with Supervalu's policy by replacing the "expression" EVERYDAY CELEBRATIONS that was used in the 2008 ad and featuring instead the original and registered branding slogan GOOD THINGS ARE JUST AROUND THE CORNER. (SOF 22, 23.)

Zimmerman decided to describe Jordan with a play on the words of the GOOD THINGS ARE JUST AROUND THE CORNER slogan by connecting Jordan's contributions on the basketball court to Defendants' services represented by their brand message and slogan. In the advertisement, Zimmerman featured Defendants' branding slogan GOOD THINGS ARE JUST AROUND THE CORNER, while at the same time linking Jordan to Jewel-Osco by referring to Jordan as "a fellow Chicagoan who was 'just around the corner' for so many years." Jordan himself thus became the substitute "expression" in the Defendants' slogan, just as "Everyday Celebrations" was used a year earlier in the Acme *Sports Illustrate Presents* ad featuring the Phillies.[2] (SOF 24.)

Defendants' advertisement also included prominent placement of the stylized JEWEL-OSCO logo in the middle of the page, immediately below the description of Jordan and immediately above the brand message GOOD THINGS ARE JUST AROUND THE CORNER. Defendants define their JEWEL-OSCO logo -REDACTED- (SOF 26, 27.)

Although Defendants now insist the ad was just a "tribute" to Michael Jordan and nothing more (and even objected in depositions when the word "advertisement" was used in questions), everyone who was involved with the ad during its creation in 2009 referred to it as an "ad" or "advertisement." As Robin Zimmerman explained, "This was Sports Illustrated. This was like, okay, this is a chance to really just look good, you know have a nice ad for ourselves and to promote Michael, you know, showcase Michael Jordan." (SOF 28, 29.)

---

[2] Defendants' assertion that "Jewel does not advertise in Sports Illustrated" (Def. Mem. at 5; Def. SOF 26) is incorrect because Jewel advertised in the magazine in 2009 and Supervalu advertised in it in 2007 and 2008. (SOF 17, 18.)

### B. Defendants Used Their Corporate Marketing Slogan And Logo As Trademarks Connecting Jordan To Their Goods and Services.

Defendants not only positioned GOOD THINGS ARE JUST AROUND THE CORNER as their principal advertising slogan, but they also applied for and received federal recognition for the slogan as a United States registered trademark. (SOF 30.) Professor McCarthy has observed: "It would appear clear that a firm's trademark is the most important element of commercial speech which is communicated to customers. All other elements of advertising revolve around, relate to and are symbolized by the trademark." 3 McCarthy on Trademarks and Unfair Competition § 31:139 (4th ed.).

The slogan GOOD THINGS ARE JUST AROUND THE CORNER was registered as a trademark by the United States Patent and Trademark Office ("USPTO") on February 10, 2009, in connection with the broad category of "retail grocery store services." To obtain registration, Supervalu submitted an affidavit attesting that the slogan was "in commerce at least as early as 09/15/2008, and is now in use in such commerce." To satisfy its burden of proving its use of the slogan in commerce, Supervalu provided the USPTO with an example or "specimen" that showed "the mark as used in commerce on or in connection with any item in the class [retail store services] consisting of . . . Supervalu's website home page." The specimen of use provided by Supervalu and accepted by the USPTO did not show prices and did not show products. (SOF 30-34.) Thus, contrary to Defendants' argument (Def. Mem. at 9), Supervalu's own sworn specimen of use *in commerce* is conclusive evidence that commercial use of its slogan may and does appear in non-traditional advertising in which neither products nor prices are depicted.

There is no dispute that Defendants' use of the slogan in the ad was as a trademark and not merely "identifying the speaker" as Defendants contend. (*Id.* at 12.) When Defendants used the slogan in the *Sports Illustrated Presents* ad, they attached the trademark symbol ™ next to it.

As Defendants have acknowledged, "Jewel uses the slogan "GOOD THINGS ARE JUST AROUND THE CORNER as a trademark." (*Id.* at 13.) Defendants' manual for use of its mark stresses that "[t]he trademark designation ™ represents notice to the world of SUPERVALU's rights in the words GOOD THINGS ARE JUST AROUND THE CORNER." It was this trademark that Defendants used in a play on words to describe Jordan and thus link him to their products and services. (SOF 35–37.)

The trademark JEWEL-OSCO is likewise a registered trademark of Defendants and is registered in connection with "retail supermarket and drug store services featuring food, drugs, household goods, automotive goods, and like general merchandise." (SOF 38.) There is no corporate entity with the name Jewel-Osco or Jewel Osco. The stores or banner known by the registered trademark JEWEL-OSCO are owned by Jewel Food Stores, Inc., whose corporate parent is Supervalu Inc. Had Defendants intended only to identify themselves as the authors of the ad, they could have easily signed the ad as "Supervalu Inc. and Jewel Food Stores, Inc." Defendants' corporate names, however, do not appear anywhere in the advertisement. Instead, they chose to use the registered trademark JEWEL-OSCO.[3] (SOF 39-41.)

Finally, there is no dispute that the trademarks' use in the ad was a use in commerce. The *Sports Illustrated Presents* that included the defendants' ad was distributed through and sold in Jewel-Osco and Dominick's stores in Illinois as well as Dominick's stores in Washington, Idaho and Montana. (SOF 42.)

---

[3] Defendants' contention that their ad is analogous to the State Farm ad in *Sports Illustrated Presents* (Def. Mem. at 13) is misplaced. While the State Farm ad prominently features the State Farm trademarks, it does not use Jordan's identity at all.

## II. ENFORCEMENT OF THE RIGHT OF PUBLICITY ACT AGAINST DEFENDANTS' COMMERCIAL USE OF JORDAN'S IDENTITY DOES NOT CONFLICT WITH THE FIRST AMENDMENT.

Defendants concede that if their use of Jordan's identity falls within the definition of "commercial purpose" under the Act, then the First Amendment does not immunize their conduct. (Def. Mem. at 6.) As Jordan showed in Section I, the undisputed facts establish that Defendants' use of Jordan's identity was a commercial use under the Act. For that reason alone Jordan is entitled to summary judgment on this issue. In addition, case law also requires a finding that Defendants' use of Jordan's identity in their *Sports Illustrated Presents* ad was a commercial use, and that as a result the First Amendment does not immunize Defendants' conduct.

### A. Case Law Supports The Conclusion That Defendants' Use Of Jordan's Identity Was A Commercial Use.

Defendants attempt to show that their use of GOOD THINGS ARE JUST AROUND THE CORNER in a play on words to describe Jordan did not make commercial use of Jordan's identity by pointing to *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915 (6th Cir. 2003). Defendants argue that *ETW* also involved the use of the defendant's trademark and that no commercial use was found. (Def. Mem. at 13.)

Defendants' argument is a serious mischaracterization of the case. In *ETW*, the defendant created a piece of artwork that incorporated Tiger Woods' image as well as the images of a number of other famous golfers. 332 F.3d at 918. The court determined that the defendant's painting was a work of art that did not use the plaintiff's identity for commercial purposes. *Id*. at 925. The court further held that the use of Tiger Woods' name by the artist was only a nominative use and not a trademark use. *Id*. at 920-21. Importantly, contrary to Defendants' assertions, the court did not consider whether the artist's identification on the painting consisted

of trademark use and, if it did, whether that trademark use transformed the work of art into a commercial use. In fact, there is absolutely nothing to indicate that the court concluded, as Defendants argue, that the defendant in the *ETW* case used a trademark of its own or that either the artist's name "Rick Rush" or the phrase "Painting America Through Sports" constituted trademarks at all.

Defendants' reliance on *Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407 (9th Cir. 1996), is even more misplaced. Far from supporting Defendants' argument that their use of Jordan's identity in the *Sports Illustrated Present*s ad was a protected, noncommercial use, *Abdul-Jabbar* actually leads to the opposite conclusion.

In the *Abdul-Jabbar* case, basketball great Kareem Abdul-Jabbar sued General Motors Corporation ("GMC") for violation of California statutory and common law rights to privacy and for violations of the Lanham Act after GMC ran an advertisement, without Abdul-Jabbar's consent, that was described by the Ninth Circuit as follows:

> This dispute concerns a GMC television commercial aired during the 1993 NCAA men's basketball tournament. The record includes a videotape of the spot, which plays as follows: A disembodied voice asks, "How 'bout some trivia?" This question is followed by the appearance of a screen bearing the printed words, "You're Talking to the Champ." The voice then asks, "Who holds the record for being voted the most outstanding player of this tournament?" In the screen appear the printed words, "Lew Alcindor, UCLA, '67, '68, '69." Next, the voice asks, "Has any car made the 'Consumer Digest's Best Buy' list more than once? [and responds:] The Oldsmobile Eighty-Eight has." A seven-second film clip of the automobile, with its price, follows. During the clip, the voice says, "In fact, it's made that list three years in a row. And now you can get this Eighty-Eight special edition for just $18,995." At the end of the clip, a message appears in print on the screen: "A Definite First Round Pick," accompanied by the voice saying, "it's your money." A final printed message appears: "Demand Better, 88 by Oldsmobile."

*Id*. at 409.

As Defendants acknowledge, the court held that the GMC ad made commercial use of Abdul-Jabbar's former name (Lew Alcindor). In reaching that conclusion, the court noted that "[h]ad GMC limited itself to the 'trivia' portion of its ad, GMC could likely defend the reference to Lew Alcindor as a nominative fair use." *Id.* at 413. But that is not what GMC did. Rather, GMC "use[d] Alcindor's record to make a claim for its car – like the basketball star, the Olds 88 won an 'award' three years in a row, and like the star, the car is a 'champ' and a 'first round pick'" and thereby "arguably attempted to 'appropriate the cachet of one product for another'. . . ." *Id.* Defendants' *Sports Illustrated Presents* ad that described Jordan as being "just around the corner" while also using Defendants' key marketing message and trademark ("Good things are just around the corner") linked Jordan to Defendants' goods and services in the same way that the GMC ad linked Abdul-Jabbar to its products. Defendants' use of Jordan's identity in the *Sports Illustrated Presents* ad was a commercial use just as GMC's use of Abdul-Jabbar's former name was a commercial use.

Defendants also claim that "courts look with heightened skepticism upon athletes' claims that their rights of publicity have been violated," for which Defendants cite a case that in turn cites a California court's citation to a commentator's article about the use of celebrities' images in artistic expressions. (Def. Mem. at 6.) Neither the case nor the commentator, however, expresses skepticism about the rights of athletes to enforce their rights to publicity. Furthermore, there is no carve-out in the Act removing athletes' publicity and related rights from the protections afforded to others, and no Illinois court interpreting the Act has ever limited its application when athletes or other public figures are plaintiffs. To the contrary, in *Brown v. ACMI Pop Div.,* 873 N.E.2d 954 (Ill. App. 2007), the Illinois Appellate Court affirmed the circuit court's decision denying defendants' motion to dismiss plaintiff's claim of violation of

-12-

the Act in a case where a photography firm distributed photographs of the entertainer James Brown on its website without his authorization.[4]

### B. The First Amendment Does Not Immunize Defendants' Conduct.

Because Defendants' use of Jordan's identity was a commercial use, the First Amendment does not immunize their unauthorized use. Defendants have not cited a single case in which the First Amendment has been invoked successfully by a defendant to immunize its use of a plaintiff's identity without authorization in connection with the defendant's promotion or advertisement of its goods or services. None of the cases cited by Defendants supports the notion that they are immunized by the First Amendment for their unauthorized use of Jordan's identity.[5]

---

[4] Defendants' discussion of *Brown* is misleading at best. First, Defendants cite *Brown* for their claim that "Illinois courts have narrowly construed the right of publicity to avoid infringing upon First Amendment and other important public interests." (Def. Mem. at 6.) But the court never says this. Instead, the court merely recites an argument made by the defendant, which the court does not adopt ("Corbis argues that Illinois courts have narrowly construed . . . .") 873 N.E.2d at 959. Second, the defendant's argument in *Brown*, cited by Defendants here, ignores the fact that the Act specifically replaced the common law right of publicity upon which older cases were decided. Section 60 of the Act expressly states that "[t]he rights and remedies provided for in this Act are meant to supplant those available under the common law as of the effective date of this Act." As the court in *Villa v. Brady Pub.*, 2002 WL 1400345 (N.D. Ill. June 27, 2002), noted, the Act "completely replaced" the common law right of publicity with "a *broader statutory right* to control the use of one's name or likeness." *Id.* at *3 (emphasis added). Thus, to the extent pre-Act cases could be said to have "narrowly construed" the right of publicity, they are inapposite. Finally, Defendants incorrectly claim that *Brown* quotes "with approval" a Ninth Circuit decision for the proposition that "[t]he broader and more ill-defined one state's right of publicity, the more it interferes with the legitimate interests of other states." (Def. Mem. at 7 n. 3.) But the *Brown* case merely restates the argument contained in an amicus brief, without endorsing its position. *Brown*, 873 N.E.2d at 96 ("ACA argues that . . . ."). In any event, Defendants have not argued that the right of publicity under the Act is overly broad or ill-defined.

[5] Even if Defendants' use of Jordan's identity were non-commercial, the First Amendment would not provide them with a complete defense to use Jordan's identity in any manner they see fit. "It is important to remember that even if the accused communication is classified, not as 'commercial speech," but as full-fledged communicative speech, the First Amendment does not automatically and of its own weight crush any and all assertions of the

-13-

Defendants cite *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 66 (1983), for the proposition that "courts take a limited view of what is commercial use in right-of-publicity cases." (Def. Mem. at 7.) But in *Bolger,* the Court found that pamphlets describing the benefits of condom use *were* in fact commercial use because they were used in connection with the promotion and sale of condoms, even if the condoms' brands were not explicitly mentioned in the advertisement. As the Court stated:

> We have made clear that advertising which "links a product to a current public debate" is not thereby entitled to the constitutional protection afforded noncommercial speech. [Citation omitted.] A company has the full panoply of protections available to its direct comments on public issues, so there is no reason for providing similar constitutional protection when such statements are made in the context of commercial transactions. See *ibid.* Advertisers should not be permitted to immunize false or misleading product information from government regulation simply by including references to public issues.

*Bolger*, 463 U.S. at 68.

Because Defendants' use of Jordan's identity was a commercial use, Defendants' cited cases that support the right merely to use historical statistics and other information about celebrities are inapposite. For example, in *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400 (Cal. Ct. App. 2001), the court correctly reasoned that because defendants had not used the plaintiffs' identities in connection with the promotion or advertisement of products or services, there was no commercial use and thus no violation of the plaintiffs' right to publicity. 94 Cal. App. 4th at 412-13. In distinguishing *Gionfriddo* from *Abdul-Jabbar*, the court observed: "Here, plaintiffs never contend that their statistics and depictions appeared in the context of an advertisement. Rather, they state that the information was used to increase interest in baseball,

---

right of publicity. Rather, the First Amendment values of free speech are balanced on a case by case basis against the right of publicity values." 2 J. Thomas McCarthy, *The Rights of Publicity & Privacy* § 8:23 (2d ed. 2010).

with the belief that this would increase attendance at games." *Id*. at 413. In this case, as in *Abdul-Jabbar* and in contrast to *Gionfriddo*, Defendants used Jordan's identity to link him to Defendants in connection with their promotion and advertisement of their own goods and services – a commercial use that is prohibited by the Act and not protected by the First Amendment.[6]

Despite Defendants' protests to the contrary, whether Defendants as corporations are entitled to speak just like any individual is not at issue in this case. (Def. Mem. at 11-12.)[7] Jordan's objection to Defendants' ad is not that it was penned by a corporation, but that it constituted a commercial use of his identity. Thus, a congratulatory message placed in the Basketball Hall of Fame program by individuals, which was clearly non-commercial, is irrelevant. Unlike Defendants, the Onanians, in congratulating Jordan, did not use any trademarks or advertising slogans to advertise their goods and services while using Jordan's identity.

Finally, Defendants' unauthorized commercial use of Jordan's identity is not immunized by calling it a "news, public affairs, or sports broadcast or account" as the Defendants suggest in the closing section of their brief. (Def. Mem. at 14.) Defendants' argument is misplaced because the Act does not create a separate exemption for any use of a person's identity that

---

[6] *Vinci v. American Can Co.*, 591 N.E.2d 793 (Ohio Ct. App. 1990), which Defendants cite for the proposition that even a commercial use of Jordan's identity would be permitted, is irrelevant to the issues in this case. In *Vinci,* mention of the athlete's name and likeness was incidental to the ad, which is permitted under Ohio law. *Id.* at 794. In this case, there is no dispute that Jordan's identity is prominently used in the ad. Indeed, Defendants claim that the ad is all about Jordan.

[7] Thus, Defendants' citation to *First Nat'l Bank of Boston, v. Bellotti*, 435 U.S. 765 (1978), and *Citizens United v. F.E.C.*, 130 S.Ct. 876 (2010), are inapposite since no one is challenging Defendants' actions based on their status as corporate speakers. (Def. Mem. at 12.) What is being challenged, which is not implicated in *Bellotti* or *Citizens United*, is Defendants' unauthorized use of Jordan's identity for commercial purposes.

might be characterized as a "news account," regardless of whether the use is in fact commercial. Instead, the Act plainly states that it does not apply to "use of an individual's identity for *non-commercial purposes*, including any news, public affairs, or sports broadcast or account, or any political campaign." 765 ILCS 1075/35(b)(2) (emphasis added). This provision merely restates the requirement in the Act that liability attaches only when a person's identity is used for commercial purposes, which is exactly what Defendants did here.

Moreover, Defendants' ad is simply not a news, public affairs or sports broadcast or account. The defendant in the *Abdul-Jabbar* case made this its final argument as well, which was rejected by the court, reasoning: "While Lew Alcindor's basketball record may be said to be 'newsworthy,' its use is not automatically privileged. GMC used the information in the context of an automobile advertisement, not in a news or sports account. Hence GMC is not protected by section 3344(d) [California statutory exception]." *Abdul-Jabbar*, 85 F.3d at 416.

For all of the foregoing reasons, summary judgment should be granted to Jordan on Count I of his Amended Complaint on the issue of the Act's requirement that his identity was used for "commercial purposes."[8] Defendants' motion for summary judgment on Count I should be denied.

### III. SUMMARY JUDGMENT SHOULD BE ENTERED FOR JORDAN ON THE ISSUE OF COMMERCIAL USE FOR EACH OF JORDAN'S REMAINING CLAIMS.

Jordan's claims under Section 43(a) of the Lanham Act for false endorsement and false designation of origin (Counts II and III) require proof that Defendants made use of their trademarks in commerce and that they misrepresented their relationship with Jordan in their

---

[8] Whether Defendants used Jordan's identity is not the subject of either motion for summary judgment except to the extent that Defendants have conceded such use for the purposes of their motion.

commercial advertising. Because Defendants' use of Jordan's identity was a commercial use and because there is no dispute that the ad was distributed in commerce, summary judgment should be granted to Jordan on these issues for Counts II and III and Defendants' motion for summary judgment should be denied on those counts.

Defendants' citation to *Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180 (9th Cir. 2001), does not support their claim that "the First Amendment is a complete defense against Lanham Act and state unfair competition claims." (Def. Mem. at 15.) As the Fifth Circuit made clear in another Lanham Act case, "false commercial speech receives no First Amendment protection." *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 557 (5th Cir. 2001); *see also Cornwell v. Sachs*, 99 F.Supp. 2d 695, 708 (E.D. Va. 2000) ("The Lanham Act's prohibition of false and misleading advertising does not arouse concerns under the free speech clause of the First Amendment.").

Moreover, in *Hoffman*, the court found that an artistic alteration in a magazine of Dustin Hoffman's image from the movie "Tootsie" was not a commercial use because the article in which the image was used did not advance a commercial message. In this case, Defendants' use of Jordan's identity *is* a commercial use and thus is not protected.

For the same reasons, Jordan should also be granted summary judgment with respect to his claim of violation of the Illinois Consumer Fraud and Deceptive Practices Act (Count IV) on the issue of whether Defendants' acts were "in the conduct of any trade or commerce." 815 ILCS 505/2. Finally, Jordan should be granted summary judgment with respect to his claim of unfair competition (Count V) on the issue of whether Defendants' acts were commercial use. Defendants' motion for summary judgment on Counts IV and V of Jordan' s Amended Complaint should be denied.

**CONCLUSION**

Defendants' use of their marketing slogan and -REDACTED- GOOD THINGS ARE AROUND THE CORNER promoted Defendants' goods and services to consumers, reminding them of "the many 'Good things' that are right there at their local SUPERVALU store." The promotion of Defendants' own goods and services through the use of their registered trademark, while explicitly linking it to and using Jordan's identity without his authorization, was a violation of Jordan's right to publicity. The First Amendment offers Defendants no safe harbor from their violation of Jordan's rights.

Nor does the First Amendment allow Defendants to falsely imply to consumers that Jordan has endorsed Defendants' goods and services or to falsely use Jordan's identity to promote them. These violations of the Lanham Act, like the claims for violation of the Illinois Consumer Fraud and Deceptive Practices Act and for unfair competition, are all based on Defendants' commercial use of Jordan's identity in connection with the promotion of Defendants' goods and services.

Jordan's motion for partial summary judgment on the issue of commercial use should therefore be granted and Defendants' motion for summary judgment should be denied.

Dated: January 24, 2011

      /s/ Frederick J. Sperling
Frederick J. Sperling
Sondra A. Hemeryck
Clay A. Tillack

SCHIFF HARDIN LLP
233 South Wacker Drive, Suite 6600
Chicago, Illinois 60606
(312) 258-5500

Attorneys for Plaintiff
Michael Jordan

# CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2011, I electronically filed the foregoing Michael Jordan's Combined Brief in Support of His Motion for Partial Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system, which will cause an electronic copy (redacted) to be served on counsel of record. Unredacted copies of same will also be served upon counsel listed below, as indicated:

**(Via Overnight Mail)**
Anthony Richard Zeuli
Merchant & Gould P.C.
3200 IDS Center
80 South Elgin Street, S-3200
Minneapolis, Minnesota 55402
*Attorneys for Jewel Food Stores, Inc. and Supervalu Inc.*

**(Via U.S. Mail)**
David E. Morrison
Oscar L. Alcantara
Goldberg, Kohn, Bell, Black, Rosenbloom
  & Moritz, Ltd.
Mid-Continental Plaza
55 East Monroe Street, #3300
Chicago, Illinois 60603
*Attorneys for Jewel Food Stores, Inc. and Supervalu Inc.*

**(Via U.S. Mail)**
Mark E. Enright
Thadford A. Felton
Arnstein & Lehr, LLP
120 South Riverside Plaza, Suite 1200
Chicago, Illinois 60606-3913
*Attorneys for Time Inc.*

**(Via Overnight Mail)**
Elisa L. Miller
Elizabeth A. McNamara
Davis Wright Tremaine LLP
1633 Broadway, 27th Floor
New York, New York 10019
*Attorneys for Time Inc.*

**(Via U.S. Mail)**
Sherry Lee Rollo
Steven Eric Feldman
Husch Blackwell Sanders Welsh & Katz
120 South Riverside Plaza, Suite 2200
Chicago, Illinois 60606
*Attorneys for Vertis, Inc.*

**(Via Overnight Mail)**
William E. Corum
Patrick D. Kuehl, Jr.
Husch Blackwell Sanders, LLP
4801 Main Street, Suite 1000
Kansas City, Missouri 64112
*Attorneys for Vertis, Inc.*

/s/ Clay A. Tillack