IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL JORDAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) Case No.: 10-cv-00340 |
| JEWEL FOOD STORES, INC., and SUPERVALU INC., | ) ) Judge Gary Feinerman ) |
| Defendants/Third-Party Plaintiffs, | ) Magistrate Judge Michael T. Mason ) |
| v. | ) ) |
| TIME INC. and VERTIS, INC., | ) ) |
| Third-Party Defendants. | ) |

**MICHAEL JORDAN'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' PETITION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES**

Defendants' Petition for Attorneys' Fees, Costs, and Expenses (the "Petition") should be denied because Defendants failed to demonstrate that Plaintiff Michael Jordan acted in bad faith by asserting his claim under the Illinois Right of Publicity Act (the "Publicity Act") for Defendants' unauthorized use of his identity.

Contrary to Defendants' argument, Illinois law – not federal copyright law – governs the analysis and disposition of the Petition. Illinois law neither allows a presumption that a prevailing defendant should be awarded its fees nor does it eliminate a defendant's burden of proving bad faith on the part of a plaintiff.

Erroneously relying on the federal copyright law's presumption that a prevailing party should be awarded its attorneys' fees, Defendants did not attempt to meet the bad faith standard required under Illinois law. Nor could they have done so because Jordan plainly did not act in

bad faith in asserting his claim under the Publicity Act. Accordingly, the Petition must be denied.

**I. DEFENDANTS MAY NOT OBTAIN ATTORNEYS' FEES UNDER THE ACT ABSENT A SHOWING OF BAD FAITH ON THE PART OF JORDAN.**

**A. The District Court Must Look To Illinois Law, Not Federal Law, To Resolve Defendants' Attorneys' Fees Claim.**

Under the *Erie*[1] doctrine, a federal court deciding a substantive state law claim under pendent or diversity jurisdiction must interpret state law by "determin[ing] the question as we predict the Supreme Court of Illinois would if it were deciding the case." *Adams v. Catrambone*, 359 F.3d 858, 862 (7th Cir. 2004). Courts exercising pendent jurisdiction over state law claims apply state substantive law to resolve those claims. *See, e.g., Air Line Pilots Ass'n, Int'l v. UAL Corp.*, 717 F. Supp. 575, 578 (N.D. Ill. 1989), *aff'd*, 897 F.2d 1394 (7th Cir. 1990) (deciding state law claims in Delaware shareholder suit by looking to fiduciary duty law established by Delaware courts); *U.S. for Use of Argyle Cut Stone Co., Inc. v. Paschen Contractors, Inc.*, 664 F. Supp. 298, 301 (N.D. Ill. 1987) (applying state law to plaintiff's request for attorneys' fees where plaintiff brought state law claims).

The starting point for interpretation under the *Erie* doctrine is to look to the Illinois courts' interpretation of a statute. *Knauz Cont'l Autos, Inc. v. Land Rover N. Am., Inc.*, 842 F. Supp. 1034, 1037 (N.D. Ill. 1993). When no state court has addressed the issues raised, the district court must ascertain how the Illinois Supreme Court would interpret the provisions at issue. *Id.* District courts will (a) look at the words of the statute, (b) consider the legislature's purpose, including what wrongs it sought to remedy and the intended consequences of the statute, if the statute is ambiguous, and (c) look to the legislative history if the language is not

---

[1] *Erie R. Co. v. Tomkins*, 304 U.S. 64 (1938).

clear and give ordinary meaning to the words used. *Id.*; *Solon v. Midwest Med. Records Ass'n, Inc.*, 925 N.E.2d 1113, 1117-18 (Ill. 2010).

> **B.  The Illinois Supreme Court Has Addressed The Issue Of When Attorneys' Fees May Be Awarded In The Context Of A Similar Statute And Has Determined That A Prevailing Defendant Must Demonstrate Bad Faith As A Threshold Matter.**

The Publicity Act provides that "[t]he court may award to the prevailing party reasonable attorney's fees, costs, and expenses relating to an action under this Act." 765 ILL. COMP. STAT. 1075/55 (2012). As Defendants have acknowledged, there is no reported decision in which a court has considered or awarded attorneys' fees to a prevailing party under the Act. But the Illinois Supreme Court has addressed awards of fees under a similar statute, the Illinois Consumer Fraud and Deceptive Business Practices Act (the "Consumer Fraud Act"). 815 ILL. COMP. STAT. 505/1 *et seq.* (2012). Like the Publicity Act, the Consumer Fraud Act provides that the court "may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party." *Id.*, section 10a(c). One of Jordan's claims in this action, Count V of the Amended Complaint, was brought pursuant to the Consumer Fraud Act under the same set of operative facts that provided the basis for Jordan's Publicity Act claims.

In *Krautsack v. Anderson*, 861 N.E.2d 633 (Ill. 2006), the Illinois Supreme Court examined the fee shifting provision in the Consumer Fraud Act to determine what a prevailing defendant would need to show in order to be considered for a discretionary award of attorneys' fees. The Supreme Court held that, in order to award attorneys' fees to a prevailing defendant, a trial court must make a threshold finding that a losing plaintiff acted in bad faith and only then consider the petition. As the Supreme Court held, "where a prevailing defendant petitions the trial court for a reasonable attorney fee under [the statute], only if the trial court makes a threshold finding that the plaintiff acted in bad faith should the trial court consider other

circumstances relevant to its exercise of discretion."[2] *Id*. at 647. The discretionary attorneys' fees provision in the Consumer Fraud Act is nearly identical to the attorneys' fees provision in the Publicity Act.

Moreover, as the Seventh Circuit observed in *Nightingale Home Healthcare,* the test in applying the Consumer Fraud Act's discretionary attorneys' fees provision is the same as the one applied when considering an award of attorneys' fees under the Lanham Act, under which Counts II and III of the Amended Complaint were brought:

> In *Door Systems, Inc. v. Pro-Line Door Systems, Inc.*, 126 F.3d 1028, 1031 (7th Cir. 1997), we said that the test was whether the conduct of the party from which the payment of attorneys' fees was sought had been "oppressive," and that "whether the plaintiff's suit was oppressive" turned on whether the suit "was something that might be described not just as a losing suit but as a suit that had elements of an abuse of process, whether or not it had all the elements of the tort.". . . The quoted passage was actually discussing the award of attorneys' fees under the Illinois Consumer Fraud and Deceptive Business Practices Act. But fees were also sought under the Lanham Act, and the opinion—seeking to make sense of one of the definitions of "exceptional" (namely, "malicious, fraudulent, deliberate, or willful") that is found, as we noted earlier, in the cases—suggests that the test is the same under both statutes: "oppressive," in the sense expounded in *Door Systems*. *Id*. at 1031-32.

*Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC,* 626 F.3d 958, 961 (7th Cir. 2010).

Thus, there is no reason to believe that the Illinois Supreme Court, when interpreting the attorneys' fees provision in the Publicity Act, would apply federal copyright law. To the

---

[2] Once the defendant as prevailing party demonstrates the plaintiff acted in bad faith in prosecuting its claim, the defendant must then demonstrate that the court should exercise its discretion to award the defendant its attorneys' fees. The court must consider several factors, including "(1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of fees against the opposing party would deter others from acting under similar circumstances; (4) whether the party requesting fees sought to benefit all consumers or businesses or to resolve a significant legal question regarding the Act; and (5) the relative merits of the parties' positions." *Krautsack,* 891 N.E.2d at 644.

contrary, it is clear the Illinois Supreme Court would apply the standard it has applied for the similarly worded attorneys' fees provision in the Consumer Fraud Act. This Court should do the same.[3]

## II. DEFENDANTS DID NOT MEET THEIR EVIDENTIARY BURDEN TO ESTABLISH THEY ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES.

### A. Defendants' Proposed "Copyright Act" Standard Is The Wrong Standard.

By arguing that the attorneys' fees standard under the federal Copyright Act should be applied to the Illinois Publicity Act, Defendants ignored *Erie* and its progeny's requirement that the district court look to state law, not federal law, when applying the state statute's attorneys' fees provisions. As discussed above, the Illinois Supreme Court would not apply the Copyright Act's attorneys' fees analysis to the Publicity Act claim. It would instead require that Defendants, as prevailing parties, demonstrate that Jordan acted in bad faith as a predicate to the court's consideration of whether it should weigh still other factors in exercising its discretion to award fees.

Defendants did not attempt to demonstrate Jordan's claim was prosecuted in bad faith or that his conduct, as the Seventh Circuit characterized it in *Nightingale Home Healthcare*, "was something that might be described not just as a losing suit but as a suit that had elements of an

---

[3] The legislative history of the Publicity Act indicates that it was viewed as a means of protecting individuals from the unauthorized use of their identities and was intended to be the Illinois counterpart to the federal Lanham Act. The Publicity Act's sponsor in the General Assembly, Arthur Turner, explained during the session when the bill was passed on May 21, 1998 that:

> I guess it would be fair to say that the example that you used in terms of using people's likeness for commercial purposes and the families not being remunerated was, in fact, the genesis of this Bill, but this is the state's answer to the Federal Act, the Lanham Act that deals with the unauthorized use of a person's likeness. So, it's a combination of the two with the state's response to what the Federal Government has done in regards to addressing that situation.

H.R. 1422, 90th Gen. Assemb., 129th Legis. Day (Ill. 1998).

abuse of process, whether or not it had all the elements of the tort." 626 F.3d at 961. Instead, Defendants merely relied on their mistaken belief that there is "a strong presumption in favor of awarding fees to a prevailing defendant." (Defendants' Petition, Doc. 211, ¶11.) And they compounded their error by insisting that Jordan could only overcome the "strong presumption" that attorneys' fees should be assessed against him by prevailing in an analysis of factors a court may consider in a copyright case, not the Illinois Publicity Act. (*Id.*, ¶¶ 12-17.)

### B. Jordan's Claims Cannot Be Characterized As Bad Faith Claims.

Jordan's claims against Defendants are based on two sets of facts that Jordan clearly established. First, there is no question that Defendants used Jordan's identity, including his persona and trademarks, without ever having requested permission to do so. (Defendants' Answer to Amended Complaint, Doc. 58, ¶18.) Second, there is no question that Defendants used their own trademarks, including their brand and brand slogan, to promote Jewel to its customers. (Michael Jordan's Supplemental Memorandum In Support Of His Motion For Partial Summary Judgment And In Opposition To The Defendants' Motion For Summary Judgment, Doc. 187, at 2-3 (testimony of Sue Herrick, Jewel's former Sales and Regional Execution Manager).)

There was of course disagreement on whether the ad in *Sports Illustrated Presents* constituted commercial speech. But the Court did not appear to think the answer to that question was easy or obvious. The briefing on Jordan's and Defendants' motions for summary judgment was completed on March 22, 2011. On May 2, 2011 the Court requested supplemental briefing. The Court then posed a series of questions to counsel at a hearing on November 2, 2011. The Court issued its opinion on February 15, 2012, nearly a year after the initial briefing on the merits was completed.

Defendants misstate the relief Jordan was seeking and they omit the reason he was doing so. Jordan was not seeking damages in either the amount by which Defendants profited from their misappropriation or the amount of any harm to Jordan's identity. Instead, as Jordan made clear in his detailed interrogatory response, he was seeking to recover the fair market value of what was taken from him, which is widely recognized as an appropriate measure of damages for misappropriation.[4]

The reason Jordan brought this case is important. The majority of Jordan's income, and his income potential, is now derived from his ability to license his name and persona to commercial sponsors. As a business, the licensing of Jordan's identity is as important to him now as his professional basketball career once was. If Jordan failed to protect his identity and trademarks, he would put them at risk.

Although Defendants try to wrap themselves in the First Amendment to justify their request for attorneys' fees, the Court should be clear what their ad was and what is was not. Defendants' ad wrapped Defendants in Jordan for – as their own witnesses admitted – their own benefit. Defendants' ad was neither political speech nor any other expression at the core of the First Amendment.

Jordan brought these claims in good faith to protect the use of his identity and trademarks. After extended consideration of the parties' motions for summary judgment, the

---

[4] In an attempt to fault Jordan for the dispute between the parties not having been resolved, Defendants disclose the settlement offer they made. Defendants failed to note, however, that Jordan also made a settlement proposal to Defendants early in the case.

Court ruled that the ad was not commercial speech. No court has awarded fees and costs to a prevailing defendant under the Illinois Publicity Act. This Court should not be the first to do so in this case.

Dated: May 3, 2012

/s/ Frederick J. Sperling
Frederick J. Sperling
Sondra A. Hemeryck
Clay A. Tillack

SCHIFF HARDIN LLP
233 South Wacker Drive, Suite 6600
Chicago, Illinois 60606
(312) 258-5500

Attorneys for Plaintiff
Michael Jordan

**CERTIFICATE OF SERVICE**

    I hereby certify that on May 3, 2012, I electronically filed the foregoing Plaintiff Michael Jordan's Memorandum In Opposition To Defendants' Petition For Attorneys' Fees, Costs, And Expenses with the Clerk of the Court using the CM/ECF system, which will cause an electronic copy to be served on counsel of record.

    /s/ Clay A. Tillack
    Clay A. Tillack